**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

**LIVIU-BENONE RADU,**

***Petitioner*,**

**v.** **Case No. 5:25-CV-1179-JKP**

**FACILITY DIRECTOR SOUTH TEXAS ICE PROCESSING CENTER, et al.,**

***Respondents*.**

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

The matter before the Court is *Pro Se* Petitioner Liviu-Benone Radu's 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus, filed on February 17, 2026. ECF No. 1. Petitioner challenges his continued immigration detention pending execution of a final removal order. He does not seek to invalidate that order. On March 10, 2026, Respondents filed a response to the Petition. ECF No. 6. Respondents maintain that detention remains authorized and that removal is reasonably foreseeable. Petitioner filed a Reply on April 22, 2026. ECF No. 9.

Having considered the Petition, the Response, the Reply and supplemental filings, as well as Respondents' September 29, 2026 Status Report, the Court concludes that Petitioner has provided good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. Respondents have failed to provide sufficient evidence to rebut that showing. The Petition is therefore **GRANTED**.

## BACKGROUND

Petitioner is a native and citizen of Romania. According to Respondents, an Immigration Judge granting withholding of removal to Romania on March 12, 2018, while ordering removal to Italy or, if Italy declined, another accepting country. ECF No. 6 at 2–3. The Board of Immigration Appeals affirmed on June 16, 2020, making the removal order administratively final. *Id.* Petitioner

has been in custody since July 8, 2025, approximately sixteen months. Respondents acknowledge that he lacks a valid passport and Italian travel documents. ICE requested Italy's acceptance on November 28, 2025, and submitted a travel-document request to the Italian Consulate on January 18, 2026. *Id.* at 4–5.

On February 10, 2026, Petitioner requested cancellation of his withholding protection so that he could return to Romania. *Id.* at 5. Respondents' submission in March 2026 stated that Petitioner's letter had been rejected and that the Immigration Judge had not yet addressed his request. *Id.* After ordered to file a Status Report, Respondents September 2026 submission identifies no subsequent order terminating withholding. ECF No. 20-1 at ¶¶16–20. The submission also states that ICE is exploring removal to permissible countries and that an ICE Deportation officer has contacted another Deportation officer to check the status of the travel document. *Id.* at ¶ 19. However, the submission identifies no issued travel document, confirmed acceptance, or anticipated removal timetable. Respondents however state that Petitioner's removal will occur in the reasonably foreseeable future. *Id.* at 20.

## APPLICABLE LAW

Section 2241 authorizes judicial review of whether immigration detention exceeds statutory authority. *Zadvydas v. Davis*, 533 U.S. 678, 687–88, 699 (2001). Although 8 U.S.C. § 1231(a)(6) permits detention beyond the statutory removal period for specified categories of noncitizens, that authority is not unlimited. Construed to avoid the serious constitutional questions raised by indefinite civil confinement, the statute permits detention only for a period reasonably necessary to accomplish removal. *Id.* at 689, 699–700. The statute's basic purpose is to assure the individual's presence at the moment of removal. *Id.* at 699. When removal is no longer reasonably foreseeable, continued detention no longer serves that purpose and is no longer authorized under the ordinary post-removal-order detention framework. *Id.* at 699–700.

*Zadvydas* establishes a presumptively reasonable period of six months. After that period, once the petitioner provides good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut the showing. *Id.* at 701. Six months is not an automatic release deadline. But the longer someone has already been detained, the shorter the period that can count as the "reasonably foreseeable future." *Id.* The petitioner does not have to prove that removal is impossible. A rule allowing continued detention whenever removal remains theoretically possible at some point in the future goes beyond what the statue allows. *Id.* at 702.

## ANALYSIS

Respondents principally invoke § 1225(b) in their Response, emphasizing Petitioner's entry without admission. ECF No. 6 at 6. Their own account, however, establishes that his removal proceedings resulted in an administratively final removal order in June 2020. His present detention is directed toward executing that final order, rather than completing the initial adjudication of his application for protection. Respondents also conducted post-order custody reviews and alternatively defend detention under § 1231(a)(6). ECF No. 6 at 3, 5, 12–15. The Court therefore analyzes the detention challenged here under the post-removal-order framework addressed in *Zadvydas*. The existence of a final removal order authorizes the Government to pursue removal, but it does not eliminate the reasonable-duration limitation on detention pending execution of that order. See *Zadvydas*, 533 U.S. at 682, 689, 699–701.

### *A. Petitioner has satisfied his initial burden.*

Petitioner's showing here rests on more than elapsed time: withholding of removal to Romania remains in place; he lacks valid travel documents; requests for Italian acceptance and documentation remain unresolved after several months; and the September declaration identifies no concrete alternative removal arrangement. ECF No. 6 at 3–5; ECF No. 20-1 at ¶¶ 10–20. Taken

together, these unresolved barriers, the lack of document progress, and detention well beyond six months provide good reason to believe removal is not significantly likely in the reasonably foreseeable future. Petitioner need not prove that Italy has refused acceptance or that removal is impossible. *See Zadvydas*, 533 U.S. at 701–02.

*B. Respondents have not rebutted that showing.*

Respondents have shown continued efforts to obtain documents and identify destinations, but not a significant likelihood of reasonably foreseeable removal. The September declaration largely repeats earlier events and identifies no foreign-government decision, anticipated document issuance date, or concrete alternative arrangement. ECF No. 20-1 at ¶¶ 11–20. Although the government need not have a confirmed flight, and courts should give consideration to the executive branch's role in carrying out removals, predictions unsupported by evidence do not rebut Petitioner's showing. *See Zadvydas*, 533 U.S. at 700–01. His willingness to return to Romania neither terminates withholding nor supplies travel documents, and Respondents fail to identify any order resolving that protection. ECF No. 6 at 5; ECF No. 20-1 at ¶¶16–20.

On this record, the possibility of eventual removal does not justify further detention under § 1231(a)(6).[1] *See Zadvydas*, 533 U.S. at 699–702.

<u>CONCLUSION</u>

Importantly, release does not vacate Petitioner's final removal order nor prevent Respondents from continuing lawful removal efforts. *Zadvydas* directs that release may and should be

[1] The Court does not minimize Petitioner's theft-related and organized-criminal activity pleas or ICE's concerns about dangerousness and flight risk. ECF No. 6 at 3–5. Those considerations may inform custody decisions and lawful supervision conditions, but they do not substitute for evidence of reasonably foreseeable removal. *Zadvydas* recognizes that dangerousness may justify confinement within a reasonable removal period, not potentially indefinite detention after its statutory justification has ceased. 533 U.S. at 690–92; 699–700. Indeed, that decision involved individuals with substantial criminal histories. *Id.* at 684–86. Respondents identify no separate special-circumstances basis for detention here. Because statutory grounds resolve the Petition, the Court need not reach Petitioner's separate challenges to the custody-review process.

subject to appropriate supervision. 533 U.S. at 700. Accordingly, the Court orders release under 8 U.S.C. § 1231(a)(3) and applicable regulations.

It is therefore **ORDERED** that:

1. Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 is **GRANTED**.
2. Respondents shall **RELEASE** Petitioner from the immigration detention challenged in this action to a public location within forty-eight hours after entry of this Order, subject to appropriate conditions of release. Respondents must **NOTIFY** Petitioner's counsel, if any, of the exact location and exact time of release as soon as practicable and no less than two hours before release. Any possible or anticipated removal or transfer of Petitioner under this present detention is **PROHIBITED**, except that Respondents may effectuate his removal to a third country if they are able to do so in accordance with the timeframe of this Order. No later than the next business day after the ordered release date, Respondents shall **FILE** a status report to confirm whether Petitioner has been released. If Petitioner disagrees with any aspect of the filed status report, he may file a separate status report.
3. To the extent a stay of removal entered in ECF No. 3 remains in effect, it is hereby **LIFTED**.
4. A written final judgment will be issued separately to summarize the orders of the Court and to close this habeas case.

**IT IS SO ORDERED this 20th day of November, 2026.**

Jason Pulliam

**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**